| | | |
|---|---|---|
| STATE OF INDIANA | ) | LAKE SUPERIOR/CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF LAKE | ) | _____, INDIANA |

| | |
|---|---|
| LEVY & DUBOVICH, <br> DEBRA LYNCH DUBOVICH, and <br> JUDY LEVY ADLER, <br><br>     Plaintiffs, <br><br>     v. <br><br> TRAVELERS CASUALTY AND <br> SURETY COMPANY OF AMERICA, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Cause No. **45D05 1506PL0 0 47**

**Filed in Clerk's Office**

JUN 1 2 2015

CLERK LAKE CIRCUIT COURT

## COMPLAINT

The plaintiffs, Levy & Dubovich, Debra Lynch Dubovich and Judy Levy Adler, by counsel, Eichhorn & Eichhorn, LLP, state as follows for their complaint against the defendant, Travelers Casualty and Surety Company of America:

## PARTIES

1. At all times relevant to this complaint, Levy & Dubovich ("Firm" herein) was a partnership, duly licensed to practice law in the State of Indiana, with its office located in Lake County, Indiana.

2. At all times relevant to this complaint, Debra Lynch Dubovich ("Dubovich" herein) was an attorney, duly licensed to practice law in the State of Indiana, who engaged in the practice of law as a partner of the Firm.

1

3. At all times relevant to this complaint, Judy Levy Adler ("Adler" herein) was an attorney, duly licensed to practice law in the State of Indiana, who engaged in the practice of law as a partner of the Firm.

4. At all times relevant to this complaint, Travelers Casualty and Surety Company of America ("Travelers" herein) was an insurance company, duly licensed to do business in the State of Indiana that had offices, agents and/or employees located within the State of Indiana.

## COMMON ALLEGATIONS

5. Travelers issued a policy of insurance to the Firm identified as Policy No. 106051075 that provided Lawyers Professional Liability Coverage to the Firm ("Policy" herein). A true and correct copy of the Policy is attached to this Complaint as Exhibit A.

6. Travelers drafted the Policy.

7. The Firm paid and Travelers accepted all premiums due for the Policy and the Firm satisfied all conditions precedent for the Policy which are relevant to the matters alleged in this Complaint.

8. The Policy provided lawyers professional liability coverage for the Firm, Dubovich and Adler for the Policy Period and the Automatic Extended Reporting Period, in the event that Travelers decided to cancel or not renew the Policy.

9. Travelers had the right and duty to defend any Claim covered by the Policy.

10. The Policy contained no exclusion for any suits based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Firm's demand for fees.

2

11. The Firm entered into an Attorney Fee Agreement with Cathy M. Djuric ("Djuric" herein) to provide legal services to her.

12. Djuric failed to pay the Firm for the legal services it provided.

13. The Firm filed a complaint against Djuric in the Laker Superior Court during the Policy Period alleging that Djuric had breached the Attorney Fee Agreement and seeking payment for the legal services provided by the Firm.

14. Travelers notified the Firm during the Policy Period that it would not renew the Policy because of excessive fee suit activity. A true and correct copy of Travelers' notice of non-renewal is attached as Exhibit B.

15. The Firm attempted to obtain professional liability coverage similar to the professional liability coverage provided by the Policy.

16. The Firm was unable to obtain similar professional liability coverage that included coverage for suits based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Firm's demand for fees.

17. As a consequence, the Firm purchased insurance coverage from the Hanover Insurance Group which included an exclusion for suits based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Firm's demand for fees ("Hanover Policy" herein).

18. On February 24, 2015, Djuric filed a counter-claim against the Firm, Adler and Dubovich. Djuric's counter-claim alleged the Firm, Adler and Dubovich committed legal malpractice.

19. On March 4, 2015, the Firm provided written notice to Travelers of the counter-claim filed by Djuric.

20. Travelers denied coverage under the Policy to the Firm, Adler and Dubovich on the bases that "the Hanover policy 'provides similar coverage for Professional Services.'" A copy of Travelers' letter denying coverage is attached as Exhibit C.

21. Travelers refused to provide a defense for the Firm, Adler and Dubovich.

22. The sole basis provided by Travelers for denying coverage and refusing to provide a defense under the Policy was its contention that the Policy provided similar coverage to the Hanover Policy.

23. The Firm, Adler and Dubovich notified Hanover Insurance Group of the counter-claim filed by Djuric and requested coverage under the Hanover Policy.

24. Hanover Insurance Group denied coverage under the Hanover Policy based upon the exclusion in the Hanover Policy for suits based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Firm's demand for fees.

25. The Firm, Adler and Dubovich notified Travelers of the denial of coverage by Hanover Insurance Group.

26. On April 28, 2015, Travelers disclaimed coverage under the Policy claiming the Hanover Policy provided similar coverage to the Policy. A true and correct copy of Travelers' declination is attached as Exhibit D.

27. Travelers has and continues to refuse to provide coverage or a defense for the Firm, Adler or Dubovich under the Policy.

## COUNT I

### **BREACH OF CONTRACT**

28. The Firm, Adler and Dubovich incorporate by reference paragraphs one through 27 of their Complaint to and for paragraph 28 of their Complaint as if fully set forth herein.

29. Travelers had duties and obligations to the Firm, Adler and Dubovich under the Policy.

30. Travelers breached its duties and obligations to the Firm, Adler and Dubovich.

31. The Firm, Adler and Dubovich have been damaged as a consequence of Traveler's breach of its duties and obligations under the Policy.

WHEREFORE, the plaintiffs, Levy & Dubovich, Judy Levy Adler and Debra Lynch Dubovich pray for entry of a judgment in their favor and against Travelers Casualty and Surety Company of America in an amount sufficient to compensate them for the damages they have sustained, prejudgment interest, fees, costs and expenses laid out herein, and for any and all other relief that may be just and appropriate under the premise.

## COUNT II

### **BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

32. The Firm, Adler and Dubovich incorporate by reference paragraphs one through 27 of their Complaint to and for paragraph 32 of their Complaint as if fully set forth herein.

33. Travelers had duties of good faith and fair dealing in their dealings with the Firm, Adler and Dubovich.

5

34. Travelers breached their duties of good faith and fair dealings in their dealings with the Firm, Adler and Dubovich.

35. The Firm, Adler and Dubovich have been damaged by Traveler's breaches of its duties of good faith and fair dealing.

WHEREFORE, the plaintiffs, Levy & Dubovich, Judy Levy Adler and Debra Lynch Dubovich pray for entry of a judgment in their favor and against Travelers Casualty and Surety Company of America in an amount sufficient to compensate them for the damages they have sustained, prejudgment interest, fees, costs and expenses laid out herein, and for any and all other relief that may be just and appropriate under the premise.

## COUNT III

### DECLARATORY JUDGMENT

36. The Firm, Adler and Dubovich incorporate by reference paragraphs one through 27 of their Complaint to and for paragraph 36 of their Complaint as if fully set forth herein.

37. This count seeks a declaratory judgment from the Court under the Uniform Declaratory Judgment Act, Ind. Code §34-14-1-1 *et seq.*, finding that Travelers has a duty to defend and provide coverage to the Firm, Adler and Dubovich under the Policy for the counter-claim filed against Djuric.

38. The Firm, Adler and Dubovich each have an interest in the Policy and seek a declaration of their rights thereunder to a defense and coverage in the matter of the counter-claim filed by Djuric.

6

WHEREFORE, the plaintiffs, Levy & Dubovich, Judy Levy Adler and Debra Lynch Dubovich pray for: entry of a declaratory judgment by this Court finding they are entitled to a defense and coverage under the Policy issued by Travelers Casualty and Surety Company of America, an award of fees, costs and expenses associated with this action and their defense of the counter-claim, and any and all other relief that may be just and appropriate under the premise.

## COUNT IV

### PUNTIVE DAMAGES

39. The Firm, Adler and Dubovich incorporate by reference paragraphs one through 27 of their Complaint to and for paragraph 3 of their Complaint as if fully set forth herein.

40. Travelers' actions were grossly negligent, undertaken in bad faith, and with reckless disregard of their obligations to the Firm, Adler and Dubovich.

41. Travelers engaged in willful and wanton misconduct that was not the result of a mistake or mere negligence.

42. The Firm, Adler and Dubovich have each sustained damages as a consequence of the gross negligence of Travelers.

WHEREFORE, the plaintiffs, Levy & Dubovich, Judy Levy Adler and Debra Lynch Dubovich pray for an award of punitive damages sufficient to punish Travelers Casualty and Surety Company of America for its willful and wanton misconduct and as will serve as an example to deter such conduct in the future, for an award of fees, expenses and costs, and any and all other relief that may be just and appropriate under the premise.

Respectfully submitted,

**EICHHORN & EICHHORN, LLP**

By:_____

David J. Beach, #18531-45
Attorney for the Plaintiffs,
Levy & Dubovich, Judy Levy Adler
and Debra Lynch Dubovich

**EICHHORN & EICHHORN, LLP**
200 Russell Street, P.O. Box 6328
Hammond, IN 46325
Telephone: 219-931-0560
Facsimile: 219-931-5370

## JURY DEMAND

The plaintiffs, Levy & Dubovich, Debra Lynch Dubovich and Judy Levy Adler, by

counsel, Eichhorn & Eichhorn, LLP, request trial by jury on the issues herein.

Respectfully Submitted

**EICHHORN & EICHHORN, LLP**

By:_____

David J. Beach, #18531-45
Attorney for the Plaintiffs,
Levy & Dubovich, Judy Levy Adler
and Debra Lynch Dubovich

EICHHORN & EICHHORN, LLP
Attorneys at Law
200 Russell Street
P.O. Box 6328
Hammond, IN 46328

8

**TRAVELERS**

RE: Risk Management PLUS+ Online® from Travelers Bond & Financial Products
(www.rmplusonline.com)

Thank you for choosing Travelers Bond & Financial Products for your professional liability insurance needs. Travelers is a market leader in providing errors & omissions liability coverage that is in-synch with your business.  As your risks evolve, so do we through our ability to provide you with responsive risk management services.

Travelers Bond & Financial Products is pleased to provide you with Risk Management PLUS+ Online, the industry's most comprehensive program for mitigating your law firm's E&O exposures. The site includes risk management tools for exposures in three main categories:

• General Practice
• Defense Law
• Plaintiff  Law

Within each of these categories reside articles and checklists about relevant topics to help mitigate potential exposures that can affect your firm.

Risk Management PLUS+ Online is a flexible, comprehensive loss prevention program that also serves Travelers Bond & Financial Products management liability customers and is available to you at no additional cost. Included in the site is a library of articles, checklists & training on relevant risk mitigation topics for the following management liability areas of potential exposure:

- Employment Practices Liability
- Fiduciary Liability
- Directors & Officers Liability
- Crime
- Kidnap and Ransom
- Identity Fraud Expense Reimbursement

The attached Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

We strongly encourage you to take full advantage of this program. Once again, thank you for choosing Travelers Bond and Financial Products.



EXHIBIT
A

RM-LPL Ed. 6-08

Page 1 of 2

Instructions for Registration & Orientation to Risk Management PLUS+ Online®

*Registration for Site Administrators:*

It is easy to register for rmplusonline.com.  Simply follow these instructions below:
1. Go to www.rmplusonline.com.
2. In the Sign-In box, click **Register.**
3. Enter the password/passcode: **TRVP400300** (Please note there are 4 letters followed by 6 numbers in the code)
4. Fill in the Registration Information and click **Submit.**
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*

1. Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.

Many firms, especially larger organizations establish Site Administrators to manage the registration of employees to Risk Management PLUS+ Online for the organization.  The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities.

## IMPORTANT NOTICE REGARDING COMPENSATION DISCLOSURE

For information about how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html

If you prefer, you can call the following toll-free number: 1-866-904-8348. Or you can write to us at Travelers, Enterprise Development, One Tower Square, Hartford, CT 06183.



**TRAVELERS**

January 28, 2014

**LEVY & DUBOVICH**

**2850 45th STREET, SUITE A,
HIGHLAND, IN 46322**

Re: Important Information about **Claims Information Line**

Dear  **LEVY & DUBOVICH**

Travelers Bond and Financial Products is pleased to announce its **1-800-842-8496** Claims Information Line. This line is designed to provide insureds with an additional resource on how to report claims or those circumstances or events which may become claims.

Policyholders will be able to obtain assistance on the following topics from the Claims Information Line:

·The information that needs to be included with the claim notice

·The address, electronic mail address and/or facsimile number to which the policyholder can send claims related information

· Get questions on the claim process answered

The Declarations Page of your policy sets forth where you should report claims and claims related information. You should also review the policy's reporting requirements to be aware of how much time you have to report a claim to Travelers. The sooner Travelers is notified, the sooner we can become involved in the process and offer assistance to our policyholder. A delay in reporting may result in all or part of a matter to fall outside of the coverage provided.

The Claims Information Line should streamline the claim reporting process and allow policyholders to ask questions on what information is needed as well as other questions which will assist them in working with Travelers. While the Claims Information Line provides policyholders a valuable resource by answering questions and providing information, the line does not replace the reporting requirements contained in the Policy.

We hope this improvement to customer service is something our policyholders will find helps them understand the claim process and provides them a resource for reporting.

Best regards,

**Kristin Montalvo**

 **TRAVELERS**

*Travelers 1ˢᵗ Choice✛* ˢᴹ

### LAWYERS PROFESSIONAL LIABILITY COVERAGE
### DECLARATIONS

POLICY NO. 106051075

**Travelers Casualty and Surety Company of America**
**Hartford, CT 06183**

(A Stock Insurance Company, herein called the Company)

> Important note: This is a claims-made policy. To be covered, a claim must be first made against an insured during the policy period or any applicable extended reporting period.

This policy is composed of the Declarations, the Professional Liability Coverage, the Professional Liability Terms and Conditions, and any endorsements attached thereto.

| ITEM 1 | **NAMED INSURED:**<br>LEVY & DUBOVICH<br><br><br>Principal Address:<br>2850  45th STREET,  SUITE A,<br>HIGHLAND, IN 46322 |
|---|---|
| ITEM 2 | **POLICY PERIOD:**<br>Inception Date: February 1, 2014          Expiration Date: February 1, 2015<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| ITEM 3 | ALL NOTICES PURSUANT TO THE POLICY MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE, OR MAIL AS SET FORTH BELOW:<br><br>Email:  PLclaims@travelers.com<br><br>FAX:     888-460-6622<br><br>Professional Liability Claims Manager<br>Travelers Bond & Financial Products<br>385 Washington Street, MC 9275-NB08F<br>St. Paul, MN 55102 |
| ITEM 4 | COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:<br><br>Lawyers Professional Liability Coverage |

©2008 The Travelers Companies, Inc. All Rights Reserved

| ITEM 5 | |
|---|---|
| | **PROFESSIONAL LIABILITY COVERAGE LIMITS** |
| | Professional Services and Network and Information Security Offenses Coverage Limits: $1,000,000 for each **Claim**; not to exceed $2,000,000 for all **Claims** |
| | Publishing and Non-profit Services Coverage Limits: $500,000 for each **Claim**; not to exceed $500,000 for all **Claims** |
| | Deductible: $5,000 each **Claim** N/A all **Claims** |
| | Retroactive Date: N/A |
| | Knowledge Date: February 1, 2014 |
| ITEM 6 | **ADDITIONAL BENEFITS LIMITS:** |
| | Crisis Event Expenses Limits: $10,000 for each **Crisis Event** $30,000 for all **Crisis Events** |
| | Disciplinary or Regulatory Proceeding Expenses Limits: $25,000 for each **Disciplinary or Regulatory Proceeding** $50,000 for all **Disciplinary or Regulatory Proceedings** |
| ITEM 7 | **PREMIUM FOR THE POLICY PERIOD:** $4,420.00 Policy Premium |
| ITEM 8 | **OPTIONAL EXTENDED REPORTING PERIODS:** |

| Additional Premium Percentage: | Additional Months: |
|---|---|
| 125% | 12 |
| 185% | 24 |
| 200% | 36 |
| 250% | 60 |
| 300% | Unlimited |

©2008 The Travelers Companies, Inc. All Rights Reserved

| ITEM 9 | FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:<br>PTC-1001-1108; LPL-1001-1108; PTC-3014-1108; PTC-2003-1108; PTC-2035-1108; PTC-2067-0411 |
|--------|--------|
|        |        |

**The Declarations, the Professional Liability Terms and Conditions, the Professional Liability Coverage, and any endorsements attached thereto, constitute the entire agreement between the Company and the Insured.**

---

Countersigned By

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Executive Vice President          Corporate Secretary

©2008 The Travelers Companies, Inc. All Rights Reserved


**TRAVELERS**

*Travelers 1ˢᵗ Choice✚ˢᴹ*

### PROFESSIONAL LIABILITY TERMS AND CONDITIONS

> *Important Note: This is a claims-made policy. To be covered, a claim must be first made against an Insured during the policy period or any applicable extended reporting period. The limit of liability available to pay settlements or judgments will be reduced by defense expenses. The deductible applies to defense expenses.*
> *Please read the policy carefully.*

These Professional Liability Terms and Conditions apply to the **Professional Liability Coverage**. If any provision in these Professional Liability Terms and Conditions is inconsistent with or in conflict with any provision of the **Professional Liability Coverage**, the provisions of the **Professional Liability Coverage** will control.

---

**I.  DEDUCTIBLE**

The first **Named Insured** will bear uninsured the amount of any applicable Deductible.

The Company's obligation to pay **Damages** and **Defense Expenses** applies only to the amount of **Damages** and **Defense Expenses** that are in excess of the applicable Deductible for each **Claim** amount set forth in ITEM 5 of the Declarations. The Company may, at its discretion, pay all or part of any Deductible amount on behalf of the first **Named Insured**, and in such event, the first **Named Insured** agrees to repay the Company any amounts so paid.

If ITEM 5 of the Declarations indicates that a Deductible applies for all **Claims**, the **Insured's** obligation to pay **Damages** and **Defense Expenses**, for all **Claims** made during each **Policy Year** will not exceed the Deductible amount for all **Claims** set forth in ITEM 5 of the Declarations. If there is no Deductible amount shown for all **Claims**, the first **Named Insured** will be responsible for the each **Claim** amount for each and every **Claim**, without further limitation regardless of how often it applies.

---

**II.  LIMITS**

A.  Professional Liability Coverage Limits

1.  Professional Services and Network and Information Security Offenses Coverage Limits

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**:

a.  the Company's maximum limit of liability for **Damages** and **Defense Expenses**, for each **Claim** made during the **Policy Year** that results from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limits for each **Claim** set forth in ITEM 5 of the Declarations;

b.  the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Policy Year** that result from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limit for all **Claims** set forth in ITEM 5 of the Declarations; and

c.  the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Automatic Extended Reporting Period** or the **Optional Reporting Period**, if applicable, that result from a **Network and Information Security Offense** or the rendering of, or failure to render, **Professional Services**, will not exceed the remaining Professional Services and Network and Information Security Offenses Coverage Limits for the last **Policy Year** in effect at the time this policy is cancelled or not renewed.

---

B. Additional Benefits Limits

   1. Crisis Event Expenses Limits

      Regardless of the number of **Crisis Events** qualifying for **Crisis Event Expenses**, or the number of persons or entities who are **Insureds**:

      a. the Company's maximum limit for **Crisis Event Expenses** for each **Crisis Event** first occurring during the **Policy Year** will not exceed the Crisis Event Expenses Limits for each **Crisis Event** set forth in ITEM 6 of the Declarations; and

      b. the Company's maximum limit for **Crisis Event Expenses** for all **Crisis Events** first occurring during the **Policy Year** will not exceed the remaining Crisis Event Expenses Limit for all **Crisis Events** set forth in ITEM 6 of the Declarations.

   2. Disciplinary or Regulatory Proceeding Expenses Limits

      Regardless of the number of **Disciplinary or Regulatory Proceedings** qualifying for **Disciplinary or Regulatory Proceeding Expenses**, or the number of persons or entities who are **Insureds**:

      a. the Company's maximum limit for **Disciplinary or Regulatory Proceeding Expenses** for each **Disciplinary or Regulatory Proceeding** first initiated during the **Policy Year** will not exceed the Disciplinary or Regulatory Proceeding Expenses Limits for each **Disciplinary or Regulatory Proceeding** set forth in ITEM 6 of the Declarations; and

      b. the Company's maximum limit for **Disciplinary or Regulatory Proceeding Expenses** for all **Disciplinary or Regulatory Proceedings** first initiated during the **Policy Year** will not exceed the remaining Disciplinary or Regulatory Proceeding Expenses Limit for all **Disciplinary or Regulatory Proceedings** set forth in ITEM 6 of the Declarations.

Payment of **Crisis Event Expenses** and **Disciplinary or Regulatory Proceeding Expenses** are not subject to a Deductible and do not reduce the applicable Professional Liability Coverage Limits.

C. Other Provisions

      Payment of **Damages** and **Defense Expenses** will reduce and may exhaust the applicable Professional Liability Coverage Limits. In the event the amount of **Damages** or **Defense Expenses**, or a combination thereof, exceeds the portion of the applicable Professional Liability Coverage Limits remaining after prior payments of **Damages** or **Defense Expenses**, or a combination thereof, the Company's liability shall not exceed the remaining amount of the applicable Professional Liability Coverage Limits. In no event will the Company be obligated to make any payment for **Damages** or **Defense Expenses** with regard to a **Claim** made after the applicable Professional Liability Coverage Limit has been exhausted by payment or tender of **Damages**, or payment of **Defense Expenses**.

      If the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the premium for this policy will be deemed fully earned, all obligations of the Company will be completely fulfilled, and the Company will have no further obligations.

## III. CLAIM DEFENSE

A. The Company has the right and duty to defend any **Claim** covered by this policy, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**, provided that the Company is not obligated to defend or to continue to defend any **Claim** made after the applicable Professional Liability Coverage Limit is exhausted by payment of **Damages** and **Defense Expenses**.

B. The **Insured** will cooperate with the Company and, upon the Company's request:

   1. assist in the defense and settlement of **Claims**;

   2. assist in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of a **Wrongful Act**; and

   3. attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

## IV. RIGHT TO APPEAL

The Company has the right, but not the duty, to appeal a judgment awarded against an **Insured** in a **Claim** the Company defends.

## V. TRANSFER CONTROL OF DEFENSE

A.   Before the applicable Professional Liability Coverage Limit is exhausted by the payment of amounts covered under this policy, the **Insured** may take control of the **Claim** defense of any outstanding **Claim** previously reported to the Company, provided that the Company consents to, or a court orders, such transfer of control.

B.   If the applicable Professional Liability Coverage Limit is exhausted by the payment of amounts covered under this policy, the Company will notify the **Insured** as soon as practicable of all outstanding **Claims** the Company is defending that are subject to such limit.

C.   The Company agrees to take all steps necessary during a transfer of control of defense to the **Insured** of any outstanding **Claim** to continue that defense during such transfer. When the Company takes such steps, the **Insured** agrees that the Company does not waive or relinquish any of the Company's rights under this policy. The **Insured** also agrees to repay the reasonable expenses incurred by the Company for such steps taken after the applicable Professional Liability Coverage Limit has been exhausted.

## VI. PRE-CLAIM ASSISTANCE

At the Company's discretion, the Company will pay **Pre-Claim Expenses** for a **Potential Claim** reported in accordance with section VIII. NOTICE OF POTENTIAL CLAIMS. **Pre-Claim Expenses** must be incurred prior to the date that any **Claim** is made based upon or arising out of such **Potential Claim**. Payment of **Pre-Claim Expenses** is not subject to a Deductible and does not reduce the applicable Professional Liability Coverage Limits. Once a **Potential Claim** becomes a **Claim**, **Damages** and **Defenses Expenses** that result from such **Claim** are subject to a Deductible and will reduce the applicable Professional Liability Coverage Limits.

## VII. INSURED'S DUTIES IN THE EVENT OF A CLAIM

In the event a **Principal Insured** becomes aware that a **Claim** has been made against any **Insured**, the **Insured**, as a condition precedent to any rights under this policy, will give to the Company written notice of the particulars of such **Claim**, including all facts related to any alleged **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, and the dates of the alleged events, as soon as practicable. The **Insured** will give the Company such information, assistance and cooperation as the Company may reasonably require.

All notices under this section must be sent or delivered to the Company set forth in ITEM 3 of the Declarations and are effective upon receipt. The **Insured** will not voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or, except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld. The Company will not be liable for any settlement, **Defense Expenses**, assumed obligation, or admission to which it has not consented.

## VIII. NOTICE OF POTENTIAL CLAIMS

If a **Principal Insured** becomes aware of a **Potential Claim** and gives the Company written notice during the **Policy Period** of the particulars of such **Potential Claim** including:

A.   all known facts related to the **Potential Claim**;

B.   the identity, if known, of each person allegedly involved in or affected by such **Potential Claim**;

C.   the date such persons became aware of the **Potential Claim**;

D.     the dates of the alleged events; and

E.     the reasons for anticipating a **Claim**,

any **Claim** subsequently made against any **Insured** arising out of such **Potential Claim** will be deemed to have been made on the date such notice was received by the Company.

All notices under this section must be sent or delivered to the Company set forth in ITEM 3 of the Declarations and will be effective upon receipt.

## IX.   *RELATED CLAIMS*

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim** , whichever is applicable. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made the date:

A.     the first of such **Claims** for **Related Wrongful Acts** was made; or

B.     the first notice of such **Potential Claim** for **Related Wrongful Acts** was received by the Company,

whichever is earlier.

## X.    *SUBROGATION*

In the event of payment under this policy, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

Section X. SUBROGATION does not apply if the **Insured**, prior to the date a **Wrongful Act** is committed, has waived its right of recovery for **Damages** that result from such **Wrongful Act**.

## XI.   *RECOVERIES*

All recoveries from third parties for payments made under this policy apply, after first deducting the costs and expenses incurred in obtaining such recovery:

A.     first, to the Company to reimburse the Company for any Deductible amount it has paid on behalf of any **Insured**;

B.     second, to the **Insured** to reimburse the **Insured** for the amount it has paid which would have been paid hereunder, but for the fact that such amount is in excess of the applicable limit hereunder;

C.     third, to the Company to reimburse the Company for the amount paid hereunder; and

D.     fourth, to the **Insured** in satisfaction of any applicable Deductible paid by the **Insured**,

provided that such recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit.

## XII.  *ACQUISITIONS*

If, during the **Policy Period**, the **Named Insured** acquires or forms an entity that performs **Professional Services**, coverage will be provided for such acquired or formed entity and its respective **Insured Persons** for **Wrongful Acts** committed after the **Named Insured** acquires or forms such entity. Coverage for such entity will end 90 days after the acquisition or formation of such entity, or the end of the **Policy Year**, whichever is earlier, unless the Company has agreed to provide such coverage by endorsement.

XIII.   **SPOUSAL AND DOMESTIC PARTNER PROFESSIONAL LIABILITY COVERAGE**

This policy applies to **Damages** and **Defense Expenses** for a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or a person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law of an **Insured Person**, but only for a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the domestic partner.

The Company has no obligation to make any payment for **Damages** or **Defense Expenses** in connection with any **Claim** made against a spouse or domestic partner of an **Insured Person** for any actual or alleged **Wrongful Act** committed by such spouse or domestic partner.

XIV.   **AUTOMATIC EXTENDED REPORTING PERIOD**

If this policy is cancelled or not renewed, the **Automatic Extended Reporting Period** applies without additional premium effective the date such policy is cancelled or not renewed. The **Automatic Extended Reporting Period** applies to **Claims** made and reported to the Company during the **Automatic Extended Reporting Period**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed, and which otherwise would be covered. A **Claim** made during the **Automatic Extended Reporting Period** will be deemed to have been made on the last day of the **Policy Period**.

XV.   **OPTIONAL EXTENDED REPORTING PERIOD**

A.   If this policy is cancelled or not renewed, the **Named Insured** may give the Company written notice that it desires to purchase an Optional Extended Reporting Period Endorsement for one of the periods set forth in ITEM 8 of the Declarations. The **Optional Extended Reporting Period** applies to **Claims** made during the **Optional Extended Reporting Period**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed and which otherwise would be covered. A **Claim** made during the **Optional Extended Reporting Period** will be deemed to have been made on:

1.   the last day of the **Policy Period**; or

2.   if such **Claim** had earlier been reported to the Company during the **Policy Period** as **Potential Claim**, the date notice was received by the Company of such **Potential Claim**,

whichever is earlier.

B.   The premium due for the Optional Extended Reporting Period Endorsement equals the percentage set forth in ITEM 8 of the Declarations of the annualized premium for this policy, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to the date such policy is cancelled or not renewed. The entire premium for the Optional Extended Reporting Period Endorsement will be deemed fully earned at the commencement of the **Optional Extended Reporting Period**.

The **Optional Extended Reporting Period** will not take effect unless the **Named Insured** has fulfilled all other duties, and complied with all other conditions and requirements under this policy, and:

1.   written notice of such election is received by the Company within 60 days of the effective date such policy is cancelled or not renewed;

2.   the additional premium for the Optional Extended Reporting Period Endorsement is paid when due; and

3.   full payment of the earned premium due, and repayment of any Deductible owed, is received by the Company within 60 days of the effective date such policy is cancelled or not renewed.

When the **Optional Extended Reporting Period** applies, it replaces the **Automatic Extended Reporting Period**.

**XVI.   ACTION AGAINST THE COMPANY**

No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial, or by written agreement of the **Insured** , the claimant, and the Company.

No person or entity has any right to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the Company be impleaded by an **Insured** or such **Insured's** legal representative. Bankruptcy or insolvency of any **Insured** or an **Insured's** estate does not relieve the Company of any of its obligations hereunder.

**XVII.   CHANGES**

Only the first **Named Insured** is authorized to make changes to the terms of this policy and solely with the Company's prior written consent.  This policy's terms can be changed only by endorsement issued by the Company and made a part of such policy.  Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person does not effect a change to any part of this policy, or estop the Company from asserting any right under the terms, exclusions, conditions and limitations of this policy, nor may the terms, exclusions, conditions and limitations hereunder be changed, except by a written endorsement to this policy issued by the Company.

**XVIII.   ASSIGNMENT**

This policy may not be assigned or transferred, and any such attempted assignment or transfer will be void and without effect unless the Company has provided its prior written consent to such assignment or transfer.

**XIX.   MISREPRESENTATION**

This policy may be considered void if, after the Inception Date of the **Policy Period** set forth in ITEM 2 of the Declarations, any **Principal Insured** has intentionally concealed or misrepresented any material fact or circumstance, concerning this insurance or the subject thereof, provided that section XIX. MISREPRESENTATION does not apply if such **Principal Insured** mistakenly:

A.    failed to disclose information to the Company; or

B.    mislead the Company.

**XX.   LIBERALIZATION**

If, during the **Policy Period**, the Company makes any changes in the form of this policy that are intended to apply to all **Insureds** that have such forms as part of their policy, and by which the insurance afforded could be extended or broadened by endorsement or substitution of form without increased premium charge, then such extended or broadened insurance inures to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.

**XXI.   AUTHORIZATION**

If this policy provides coverage for more than one **Named Insured**, the first **Named Insured** set forth in Item 1 of the Declarations is the sole agent and acts on behalf of all **Insureds** with respect to:

A.    payment of premiums and deductibles;

B.    receiving any return premiums;

C.    receiving notices of cancellation, nonrenewal or change in coverage;

D.     requesting any change in coverage; or

E.     making or, if applicable, consenting to settlement or compromise of any **Claim**,

provided that nothing herein relieves any **Insured** from giving any notice to the Company that is required under this policy.

## XXII.   HEADINGS

The titles of the various paragraphs of this policy and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.

## XXIII.   CONFORMITY TO STATUTE

Any part of this policy that conflicts with any requirement of statutory or regulatory law that applies is automatically amended to conform to such law.

## XXIV.   LEGAL REPRESENTATIVES

In the event of the death, incapacity or bankruptcy of an **Insured**, any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured** are deemed to be a **Claim** made against such **Insured**.  Such estate, heirs, legal representatives or assigns have all of the **Insureds** rights and duties under this policy.

## XXV.   TERRITORY

This policy applies to **Claims** made for **Wrongful Acts** committed anywhere in the world.

 **TRAVELERS J**

*Travelers 1ˢᵗ Choice✛ ˢᴹ*

## LAWYERS PROFESSIONAL LIABILITY COVERAGE

> *Important Note: This is a claims-made policy. To be covered, a claim must be first made against an Insured during the policy period or any applicable extended reporting period.*
> *The limit of liability available to pay settlements or judgments will be reduced by defense expenses. The deductible applies to defense expenses.*
> *Please read the policy carefully.*

### CONSIDERATION CLAUSE

**IN CONSIDERATION** of the premium set forth in ITEM 7 of the Declarations, and pursuant to all the terms, exclusions, conditions and limitations of this policy, the Company and the **Insured** agree as follows:

### I.   INSURING AGREEMENT

The Company will pay on behalf of the **Insured, Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

### II.   SUPPLEMENTARY PAYMENTS

The Company will pay the following with respect to any **Claim** covered by this policy:

A.     All expenses incurred by the Company, other than **Defense Expenses**.

B.     All reasonable expenses incurred by the **Insured** at the Company's request to investigate or defend a **Claim**, provided that the maximum amount available for loss of earnings for time taken off work will not exceed:

1.     $500 per **Insured Person** per day; and
2.     $15,000 per **Policy Year** for all **Insured Persons**.

C.     The cost of bonds to release attachments that is within the applicable Professional Liability Coverage Limit, provided that the Company will not be the principal under any such bond and will not have any duty to furnish such bond.

D.     All costs taxed against the **Insured** on that part of a judgment the Company pays.

E.     The cost of any required appeal bond for that part of a judgment that is for **Damages** to which this policy applies, and that is within the applicable Professional Liability Coverage Limit, provided that:

1.     the Company consents to the appeal of such judgment; and
2.     the Company will not be the principal under any such bond and will not have any duty to furnish such bond.

Payment of amounts under section II. SUPPLEMENTARY PAYMENTS will not be subject to a Deductible and will not reduce the applicable Professional Liability Coverage Limits. If the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the Company will have no further obligation to make payments under section II. SUPPLEMENTARY PAYMENTS.

*III.*     **ADDITIONAL BENEFITS**

The Company will reimburse the **Insured** for the following:

A.     **Crisis Event Expenses** that result from a **Crisis Event** first occurring and reported to the Company during the **Policy Period**.

B.     **Disciplinary or Regulatory Proceeding Expenses** that result from a **Disciplinary or Regulatory Proceeding** first initiated and reported to the Company during the **Policy Period**.

*IV.*     **DEFINITIONS**

Wherever appearing in this policy, the following words and phrases appearing in bold type will have the meanings set forth in section IV. DEFINITIONS:

A.     *Automatic Extended Reporting Period* means the period of time beginning with the effective date this policy is cancelled or not renewed, and ending:
   1.     60 days after such cancellation or nonrenewal takes effect; or
   2.     the date any other policy obtained by the **Named Insured** that provides similar coverage for **Professional Services** takes effect,

whichever is earlier.

B.     *Claim* means:
   1.     a demand for money or services;
   2.     a civil proceeding commenced by service of a complaint or similar pleading; or
   3.     a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against any **Insured** for a **Wrongful Act**.

A **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

C.     *Crisis Event* means any:
   1.     **Wrongful Act;**
   2.     death, departure or debilitating illness of a **Principal Insured**;
   3.     potential dissolution of the **Named Insured**;
   4.     incident of workplace violence; or
   5.     other event,

that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

D.     *Crisis Event Expenses* means reasonable fees, costs, and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **Crisis Event**.

E.   *Damages* means money which an **Insured** is legally obligated to pay as settlements, judgments and compensatory damages; punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages; or prejudgment and postjudgment interest. *Damages* does not include the following:

1.   Civil or criminal fines; sanctions; liquidated damages; payroll or other taxes; penalties; the multiplied portion of any multiplied damage award; equitable or injunctive relief; any return, withdrawal, restitution or reduction of professional fees, profits or other charges; or damages or types of relief deemed uninsurable under applicable law.

2.   **Defense Expenses**.

F.   *Defense Expenses* means reasonable and necessary fees, costs and expenses, incurred by the Company, or by the **Insured** with the Company's written consent, that result directly from the investigation, defense, settlement or appeal of a specific **Claim**, provided that **Defense Expenses** do not include any payments made pursuant to sect ion II. SUPPLEMENTARY PAYMENTS of the **Professional Liability Coverage**.

G.   *Disciplinary or Regulatory Proceeding* means any formal administrative or regulatory proceeding by a disciplinary or regulatory official, board or agency, commenced by filing of a notice of charges, formal investigative order, service of summons or similar document, to investigate charges of professional misconduct in the performance of **Professional Services**.

H.   *Disciplinary or Regulatory Proceeding Expenses* means reasonable and necessary fees, costs and expenses incurred by any **Insured** to investigate, defend, or appeal any **Disciplinary or Regulatory Proceeding**.

*Disciplinary or Regulatory Proceeding Expenses* do not include:
1.   fines, penalties or sanctions assessed against any **Insured**; or
2.   expenses, salaries, wages, benefit s, or overhead of, or paid to, any **Insured**.

I.   *Independent Contractor* means any natural person who performs **Professional Services** under contract with, and at the sole direction and control of, an **Insured** , provided that such **Professional Services** inure to the benefit of the **Named Insured.**

J.   *Insured* means any **Insured Person, Named Insured**, or **Predecessor Firm.**

K.   *Insured Person* means any natural person who:
1.   is the sole owner of, or is or was a partner in, the **Named Insured** or **Predecessor Firm;**
2.   was or is a member of the board of managers, director, executive officer, or shareholder of the **Named Insured** or **Predecessor Firm;**
3.   was or is an employee of the **Named Insured** or **Predecessor Firm;** or
4.   was or is an **Independent Contractor** or Of Counsel attorney,

provided that such person is acting within the scope of their duties on behalf of the **Named Insured** or **Predecessor Firm.**

L.   *Lobbyist* means a lawyer who is registered in accordance with any federal or state statute governing the conduct of lobbyists.

M.   *Named Insured* means the person or entity set forth in ITEM 1 of the Declarations.

N.   *Network and Information Security Offense* means:
1.   the failure to prevent the transmission of a computer virus or any other malicious code;
2.   the failure to provide any authorized user of the **Named Insured's** website, or the **Named Insured's** computer or communications network, with access to such website, or computer or communications network; or
3.   failure to prevent unauthorized access to, or use of, data containing private or confidential information of others.

O..   **Non-Profit Entity** means any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

P.    **Non-Profit Services** means only services that the **Insured** performs for others, with the knowledge and consent of, or as part of the duties regularly assigned by, the **Named Insured**, while serving in the capacity as a:
1.    director, officer or committee member of an attorneys' bar association; or
2.    director, officer or trustee of a **Non-Profit Entity**.

Q.    **O ptional Extended Reporting Period** means the period of time specified in the Optional Extended Reporting Period Endorsement, beginning with the effective date this policy is cancelled or not renewed.

R.    **Personal Injury Offense** means any of the following offenses:
1.    False arrest, detention or imprisonment.
2.    Malicious prosecution.
3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor, provided that the wrongful eviction, wrongful entry, or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord, or lessor of that room, dwelling, or premises.
4.    Oral, written, or electronic publication of material that slanders or libels a person or entity or disparages a person's or entity's goods, products, or services, provided that the **Claim** is made by a person or entity that claims to have been slandered or libeled, or whose goods, products, or services have allegedly been disparaged.
5.    Oral, written, or electronic publication of material that appropriates a person's likeness, unreasonably places a person in false light, or gives unreasonable publicity to a person's private life.

S.    **Policy Period** means the period from the Inception Date to t he Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date this policy is cancelled or not renewed.

T.    **Policy Year** means:
1.    the period of one year following the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof; or
2.    the period between the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof and the effective date this policy is cancelled or not renewed if such period is less than one year.

U.    **Potential Claim** means any conduct or circumstance that might reasonably be expected to be the basis of a **Claim**.

V.    **Pre-Claim Expenses** means reasonable fees, costs and expenses incurred by the Company in the investigation of a specific **Potential Claim**.

W.    **Predecessor Firm** means any law firm that, prior to the Inception Date set forth in ITEM 2 of the Declarations, is dissolved or inactive and is no longer rendering **Professional Services**, and:
1.    some or all of such firm's principals, owners, officers, or partners have joined the **Named Insured** and more than 50% of such firm's assets have been assigned or transferred to the **Named Insured**; or
2.    at least 50% of the principals, owners, officers, or partners of such firm have joined the **Named Insured**.

X.    **Principal Insured** means a member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager, or in-house general counsel of the **Named Insured**.

Y.   *Professional Liability Coverage* means the coverage part set forth in ITEM 4 of the Declarations.

Z.   *Professional Services* means only services in any of the following capacities, and pro-bono services in such capacities, provided that such pro-bono services are performed with the knowledge and consent of the **Named Insured**:
1. Lawyer.
2. Law clerk, paralegal, legal secretary or other legal support staff.
3. Arbitrator or mediator.
4. **Lobbyist**.
5. Notary public, provided that the **Insured Person** witnessed and attested to the authenticity of the signature notarized by such **Insured Person**.
6. **Title Agent**.
7. Administrator, conservator, receiver, executor, guardian, trustee or any similar fiduciary capacity, directly connected with the **Insured's** practice of law.

AA.   *Publishing* means creating and producing any material directly related to the practice of law in any format for distribution or sale to others, including preparing materials, or presenting seminars, for continuing legal education credit, provided that such **Publishing** is performed with the knowledge and consent of the **Named Insured**.

BB.   *Related Wrongful Acts* means **Wrongful Acts** which are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision.

All **Related Wrongful Acts** are a single **Wrongful Act**, and all **Related Wrongful Acts** will be deemed to have been committed at the time the first of such **Related Wrongful Acts** was committed whether prior to or during the **Policy Period**.

CC.   *Title Agent* means an agent of a title insurance underwriter.

DD.   *Wrongful Act* means any:
1. actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services** or **Non-Profit Services**;
2. actual or alleged act, error, omission, or **Personal Injury Offense** in **Publishing**; or
3. **Network and Information Security Offense,**

by the **Named Insured** or any **Predecessor Firm**, or by any other **Insured** while acting within the scope of their duties on behalf of the **Named Insured** or any **Predecessor Firm**.

## V.   EXCLUSIONS

### A.   Beneficiary Or Distributee Of A Trust Or Estate

This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a beneficiary or distributee of any trust or estate.

### B.   Claims By An Insured Against Another Insured For Certain Legal Services

This policy does not apply to any **Claim** by any **Insured** against another **Insured**, provided that this exclusion will not apply to the Company's duty to defend, or to pay **Defense Expenses** for, **Claims** by any **Insured** against another **Insured** that result from any **Insureds** capacity as a lawyer in connection with the following legal services:
1. Estates.
2. Trusts.
3. Probate.
4. Criminal defense.

5.   Domestic relations.
6.   Residential or commercial real estate closings.

C.   **Claims By Certain Persons Or Entities**
This policy does not apply to any **Claim** brought by or on behalf of, or in the name or right of:
1.   the **Non-Profit Entity** or any of its affiliates or subsidiaries;
2.   the attorneys' bar association; or
3.   the directors, officers or trustees of the **Non-Profit Entity** or attorneys' bar association,

in any **Insured's** rendering of, or failure to render, **Non-Profit Services**, provided that this exclusion will not apply if the **Claim** is made and continued by or on behalf of such **Non-Profit Entity** or attorneys' bar association without the solicitation, assistance, active participation or intervention of such **Non-Profit Entity** or attorneys' bar association or their respective directors, officers or trustees.

D.   **Contractual Liability**
This policy does not apply to any **Claim** based upon or arising out of liability assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement.

E.   **Criminal, Dishonest, Fraudulent Or Malicious Conduct**
This policy does not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured**, provided that this exclusion will not apply to:
1.   any **Insured Person** who did not participate in or have knowledge of such conduct or violation; or
2.   the Company's duty to defend, or to pay **Defense Expenses** for, any **Claim** for malicious prosecution or abuse of process.

F.   **Employee Retirement Income Security Act** This policy does not apply to any **Claim** based upon or arising out of any **Insured's** services or capacity as a fiduciary under the Employee Retiree Income Security Act of 1974 and its amendments or any regulation or order issued purs uant thereto, except if an **Insured** is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan.

G.   **Expected Or Intended Failure And Internet Service Interruption**
This policy does not apply to any **Claim** based upon or arising out of any **Network and Information Security Offense** that results in:
1.   the failure to provide access to the **Named Insured's** website, or the **Named Insured's** computer or communications network, that was expected or intended by the **Insured**; or
2.   any Internet service interruption or failure, provided that this exclusion will not apply if the interruption or failure was caused by an **Insured**.

H.   **Government Demands Or Proceedings**
This policy does not apply to any **Claim** based upon or arising out of a **Network and Information Security Offense** and brought by:
1.   the Federal Trade Commission;
2.   the Federal Communications Commission; or
3.   any other federal, national, state, local, or foreign government, agency, or entity,
provided that this exclusion will not apply to any **Claim** made by such entity in its capacity as a customer or client of the **Named Insured**.

I.   **Intentional Misuse Of Money Or Property**
This policy does not apply to any **Claim** based upon or arising out of:
1.   any **Insured's** conversion, commingling, defalcation, misappropriation or other intentional misuse or illegal use of funds, money or property;

2.  the willful or intentional breach or disregard of any oral or written **Title Agent** underwriting or binding authority by any **Insured**,

in any **Insured's** capacity as a **Title Agent**.

**J.  Management Capacity**
This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a director or officer of any entity other than the **Named Insured**, provided that this exclusion will not apply to the **Insured's** capacity as a director or officer of a **Non-Profit Entity**.

**K.  Management Or Equity Interest**
This policy does not apply to any **Claim** based upon or arising out of **Professional Services** or **Publishing** for any entity that, at the time of the **Wrongful Act**, any **Insured**, or any **Insured Person's** spouse, individually or collectively with one or more **Insureds**, manages, controls or has an equity interest which exceeds 15%.

**L.  Public Official Or Government Employee**
This policy does not apply to any **Claim** based upon or arising out of any **Insured's** capacity as a public official, or employee of a government body, subdivision or agency, provided that this exclusion will not apply to an **Insured's Professional Services** for such government body, subdivision or agency if:
1.  the **Insured** is deemed to be a public official or employee of such government body, subdivision or agency solely because of **Professional Services** to such entity; and
2.  the remuneration for such **Professional Services**, if any, inures to the benefit of the **Named Insured**.

**M.  Securities, Real Estate Or Other Investments**
This policy does not apply to any **Claim** based upon or arising out of the promotion, sale or solicitation by any **Insured** of securities, real estate, or other investments.

---

## VI.  CONDITIONS

**A.  SETTLEMENT** The Company will not settle a **Claim** without the consent of the **Named Insured**. The Company may, with the consent of the **Named Insured**, settle or compromise any **Claim**, within the applicable Professional Liability Coverage Limits, as the Company deems expedient. In the event that the Company recommends a settlement offer for any **Claim** that is acceptable to the claimant, and the **Named Insured** refuses to consent to such settlement offer, the Company will not pay more for **Damages** and **Defense Expenses** for such **Claim** than the combined total of:

1.  the amount of such proposed settlement offer;
2.  the amount of **Defense Expenses** incurred prior to the date the **Named Insured** refused to consent to the proposed settlement offer; and
3.  50% of the amount of **Damages** and **Defense Expenses** incurred in excess of the combined total of the amounts set forth in 1 and 2 of this section above,

provided that the Company w ill have no obligation to pay **Damages** or any **Defense Expenses**, or to defend or continue to defend any **Claim**, after the applicable Professional Liability Coverage Limit that applies to such **Claim** has been exhausted.

**B.  OTHER INSURANCE**
This policy will apply only as excess insurance over , and will not contribute with, any other valid and collectible insurance available to the **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this policy by reference in such other insurance to this policy. This policy will not be subject to the terms of any other insurance.

---

**C.    DEDUCTIBLE**

The following is added to section I. DEDUCTIBLE of the Professional Liability Terms and Conditions:

If the Company and the first **Named Insured** agree to the final settlement of a **Claim** with the claimant during the initial voluntary mediation of that **Claim** or within 30 days after participation in such mediation, the first **Named Insured's** Deductible obligation for such **Claim** will be reduced by 50% subject to a maximum reduction of $25,000. Deductible payments made prior to the application of the above credit will be reimbursed within 30 days of the resolution of the **Claim**. This reduction does not apply to any **Claim** resolved through voluntary or involuntary arbitration.

No Deductible will apply to **Damages** or **Defense Expenses** for **Claims** that result from the rendering of, or failure to render, pro-bono services in the **Insured's** capacity as a lawyer.

**D.    LIMITS**

The following is added to section II. LIMITS of the Professional Liability Terms and Conditions:

2.    Publishing and Non-Profit Services Coverage Limits

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**:

a.    the Company's maximum limit of liability for **Damages** and **Defense Expenses**, for each **Claim** made during the **Policy Year** that results from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the Publishing and Non-Profit Services Coverage Limit for each **Claim** set forth in ITEM 5 of the Declarations;

b.    the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Policy Year** that result from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the Publishing and Non-Profit Services Coverage Limit for all **Claims** set forth in ITEM 5 of the Declarations; and

c.    the Company's maximum limit of liability for all **Damages** and **Defense Expenses**, for all **Claims** made during the **Optional Reporting Period**, if applicable, that result from **Publishing** or the rendering of, or failure to render, **Non-Profit Services** will not exceed the remaining Publishing and Non-Profit Services Liability Coverage Limits for the last **Policy Year** in effect at the time this **Professional Liability Policy** is cancelled or not renewed;

provided that if the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the Company will have no further obligation to ma ke any payments under the Publishing and Non-Profit Services Coverage Limits.

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

---

### INDIANA REQUIRED ENDORSEMENT

This endorsement changes the following:

**Professional Liability Terms and Conditions**

Lawyers Professional Liability Coverage

---

**It is agreed that:**

1.  The following sections are added to the Professional Liability Terms and Conditions:

## CANCELLATION

If this policy has been in effect for 90 days or less, the Company may cancel for any reason by mailing or delivering notice of such cancellation to the first **Named Insured**.  If cancellation is for nonpayment of premium, the Company will mail or deliver notice of cancellation to the first **Named Insured** at least 10 days before the effective date of cancellation. If cancellation is for fraud or misrepresentation, the Company will mail or deliver notice of cancellation to the first **Named Insured** at least 20 days before the effective date of cancellation.  If cancellation is for any other reason, the Company will mail or deliver notice of cancellation to the first **Named Insured** at least 30 days before the effective date of cancellation.

If this policy has been in effect for more than 90 days, the Company may cancel only for the following reasons:

  1.    Nonpayment of premium;

  2.    Fraud or material misrepresentation;

  3.    The substantial change in the scale of risk covered by this policy;

  4.    Cancellation of reinsurance; or

  5.    Failure to comply with reasonable safety or loss control recommendations.

The Company may cancel by mailing or delivering notice of cancellation to the first **Named Insured** at least 10 days before the effective date of cancellation, if the cancellation is for nonpayment of premium.  If cancellation is for fraud or misrepresentation, the Company will mail or deliver notice of cancellation to the first **Named Insured** at least 20 days before the effective date of cancellation.  If cancellation is for any other reason, the Company will mail or deliver notice of cancellation to the first **Named Insured** at least 45 days before the effective date of cancellation.

The first **Named Insured** may cancel this policy by mailing or delivering the policy to the Company or any of the Company's authorized agents, and provide the date such cancellation will be effective.

## NONRENEWAL

The Company will not be required to renew this policy.  If the Company decides not to renew or continue the policy, notice of nonrenewal will be mailed to the first **Named Insured** at least 45 days before the Expiration Date set forth in ITEM 2 of the Declarations.

The Company will mail the notice of cancellation or nonrenewal to the last known address of the first **Named Insured** and the agent or broker of record.  A post office certificate of mailing will be sufficient proof of mailing of notice.

---

Issuing Company:Travelers Casualty and Surety Company of America
Policy Number: 106051075

2.  The following replaces section **XIX. MISREPRESENTATION** in the Professional Liability Terms and Conditions:

This policy does not apply to any **Claim** against any **Insured** under this policy if any **Principal Insured** has intentionally concealed or misrepresented any material fact or circumstance concerning such **Claim**, this insurance or the subject thereof, provided that this section XIX. MISREPRESENTATION does not apply if such **Principal Insured** mistakenly:

A.  failed to disclose information to the Company; or
B.  mislead the Company.

3.  If the **Professional Liability Coverage** set forth in ITEM 4 of the Declarations is Real Estate Services Professional Liability, the following replaces section **IV. DEFINITIONS W., Pollution**:

W.  *Pollutant* means any solid, liquid, gaseous, or thermal substance or material, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, and waste, that:

1.  is identified as dangerous, hazardous, or toxic, or is otherwise regulated, in any **Federal or Indiana Environmental, Health Protection, or Safety Law**; or

2.  has an actual, alleged, or threatened irritating or contaminating effect on any person or property.

**Pollutant** includes any such substance or material, regardless of whether or not:

1.  the substance or material, or the particular form, type, or source of the substance or material, involved in the **Claim** is specifically identified or described in this definition, such as waste from manufacturing operations;

2.  the substance or material has or had a function in any business, operations, premises, or work site of the **Named Insured** or any other person or organization protected under this policy, such as perchloroethylene (perc) for a dry cleaning business;

3.  the substance or material represents a major source of potential liability, loss, or damage for the **Named Insured** or any other person or organization protected under this policy, such as gasoline for a gasoline station;

4.  the **Named Insured** or any other person or organization protected under this policy expects or considers the substance or material to be a **Pollutant**; or

5.  the **Claim** includes or involves any actual or alleged violation of, or liability under, any **Federal or Indiana Environmental, Health Protection, or Safety Law**.

4.  If the **Professional Liability Coverage** set forth in ITEM 4 of the Declarations is Real Estate Services Professional Liability, the following is added to section **IV. DEFINITIONS**:

*Federal or Indiana Environmental, Health Protection, or Safety Law* means any law of the United States of America, which is also known as federal law or Indiana state or local law that is intended to:

1.  control pollution;

2.  protect or safeguard human health; or

3.  protect any part of the environment, including indoor air, outdoor air, land, surface water, or underground water.

For Example:

The following Federal Laws:
1. The Clean Air Act of 1970 (42 United States Code Section 7401).
2. The Clean Water Act of 1977 (33 United States Code Section 1251).
3. The Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 United States Code Section 9601).
4. The Emergency Planning and Community Right-To-Know Act of 1986 (42 United States Code Section 11001).
5. The Federal Insecticide, Fungicide, and Rodenticide Act of 1972 (7 United States Code Section 136).
6. The Occupational Safety and Health Act of 1970 (29 United States Code Section 651).
7. The Pollution Prevention Act of 1990 (42 United States Code Section 13101).
8. The Refuse Act of 1899 (33 United States Code Section 407).
9. The Resource Conservation and Recovery Act of 1976, which is sometimes also referred to as the Solid Waste Disposal Act, (42 United States Code Section 6901).
10. The Safe Drinking Water Act of 1974 (42 United States Code Section 300f).
11. The Toxic Substances Control Act of 1976 (15 United States Code Section 2601).

The section of the United States Code referenced after the title of each of the laws listed above is where such law begins.

Indiana state law: Any provision of Indiana Code Title 13 (Environment).

Indiana local law: An Ordinance Establishing Spill Reporting Requirements and Procedures Within the Civil City of Hammond, Indiana (No. 6007).

**Federal or Indiana Environmental, Health Protection, or Safety Law** includes:
1. any amendment to such law; and
2. any list, regulation, or rule issued or promulgated under such law by a federal governmental authority or an Indiana state or local governmental authority.

The content of **Federal or Indiana Environmental, Health Protection, or Safety Law,** and information about certain substances or materials that are identified as dangerous, hazardous, or toxic, or are otherwise regulated, in such laws, is generally available at or through the following places or sources:
1. Indiana courthouse or law school law libraries.
2. Indiana public libraries.
3. The U.S. Environmental Protection Agency, including its website at www.epa.gov.
4. The Indiana Department of Environmental Management, including its website at www.in.gov/idem.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company:   Travelers Casualty and Surety Company of America
Policy Number:   106051075
PTC-3014 Ed. 11-08 Printed in U.S.A.
©2008 The Travelers Companies, Inc. All Rights Reserved

## NOTICE TO OUR INDIANA POLICYHOLDERS
## FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

Questions regarding your policy or coverage should be directed to:

Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company
and their property and casualty affiliates

Contact number: (651) 310-7911

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer, you may contact the Indiana Department of Insurance by mail, telephone or email:

Public Information / Market Conduct
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
Consumer Hotline:  1-800-622-4461

In the Indianapolis area:  1-317-232-2395

Complaints can be filed electronically at www.in.gov/idoi

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DEFENSE EXPENSES IN ADDITION TO THE LIMITS ENDORSEMENT

This endorsement changes the following:

**Professional Liability Terms and Conditions**

Lawyers Professional Liability Coverage

**It is agreed that:**

1.   The following replaces the *Important note* in the **Professional Liability Coverage** part:

> *Important note: This is a claims-made coverage. Please read the policy carefully.*

2.   The following replaces section **II. LIMITS**, A. Professional Liability Coverage Limits:

A. Professional Liability Coverage Limits

1.   Professional Services and Network and Information Security Offenses Coverage Limits

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**:

a.   the Company's maximum limit of liability for **Damages** for each **Claim** made during the **Policy Year** that results from a **Network And Information Security Offense** or the rendering of or failure to render **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limits for each **Claim** as set forth in ITEM 5 of the Declarations;

b.   the Company's maximum limit of liability for all **Damages** for all **Claims** made during the **Policy Year** that result from a **Network And Information Security Offense** or the rendering of or failure to render **Professional Services**, will not exceed the Professional Services and Network and Information Security Offenses Coverage Limits for all **Claims** as set forth in ITEM 5 of the Declarations; and

c.   the Company's maximum limit of liability for all **Damages** for all **Claims** made during the **Automatic Extended Reporting Period** or the **Optional Reporting Period**, if applicable, that result from a **Network And Information Security Offense** or the rendering of or failure to render **Professional Services**, will not exceed the remaining Professional Services and Network and Information Security Offenses Coverage Limits for the last **Policy Year** in effect at the time this policy is cancelled or not renewed.

3.   The following replaces section **II. LIMITS**, C. Other Provisions:

C.   Other Provisions

Payment of **Damages** will reduce and may exhaust the applicable Professional Liability Coverage Limits. In the event the amount of **Damages** exceeds the portion of the applicable Professional Liability Coverage Limit remaining after prior payments of **Damages**, the Company's liability shall not exceed the

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106051075

remaining amount of the applicable Professional Liability Coverage Limit. In no event will the Company be obligated to make any payment for **Damages** with regard to a **Claim** after the applicable Professional Liability Coverage Limit has been exhausted by payment or tender of **Damages**.

If the Professional Services and Network and Information Security Offenses Coverage Limits are exhausted by the payment of amounts covered under this policy, the premium for this policy will be fully earned, all obligations of the Company will be completely fulfilled, and the Company will have no further obligations.

4. The following replaces section **III. CLAIM DEFENSE**:

**III.**   **CLAIM DEFENSE**

1.   The Company has the right and duty to defend any **Claim** covered by this policy, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided that the Company is not obligated to defend or to continue to defend any **Claim** after the applicable Professional Liability Coverage Limit is exhausted by payment of **Damages**.

2.   The **Insured** will cooperate with the Company and, upon the Company's request:

a.   assist in the defense and settlement of **Claims**;

b.   assist in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of a **Wrongful Act**; and

c.   attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

5. The following replaces section **VI. PRE-CLAIM ASSISTANCE**:

**VI.**   **PRE-CLAIM ASSISTANCE**

At the Company's discretion, the Company will pay **Pre-Claim Expenses** for a **Potential Claim** reported in accordance with section VIII. NOTICE OF POTENTIAL CLAIMS. **Pre-Claim Expenses** must be incurred prior to the date that any **Claim** is made based upon or arising out of such **Potential Claim**. Payment of **Pre-Claim Expenses** is not subject to a Deductible and does not reduce the applicable Professional Liability Coverage Limits. Once a **Potential Claim** becomes a **Claim**, **Damages** that result from such **Claim** are subject to a Deductible and will reduce the applicable Professional Liability Coverage Limits.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company:   Travelers Casualty and Surety Company of America
Policy Number:   106051075
PTC-2003 Ed. 11-08 Printed in U.S.A.                                                                   Page 2 of 2
©2008 The Travelers Companies, Inc. All Rights Reserved

> **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## OPTION TO REQUEST A NAMED INDIVIDUAL EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement changes the following:

Lawyers Professional Liability Coverage

**It is agreed that:**

The following is added to section **VI. CONDITIONS**:

**OPTION TO REQUEST A NAMED INDIVIDUAL EXTENDED REPORTING PERIOD ENDORSEMENT**

1.  If during the **Policy Period** any **Insured Person**:

    a.  becomes disabled and permanently ceases performance of **Professional Services**;

    b.  retires and permanently ceases performance of **Professional Services**; or

    c.  dies,

    such **Insured Person** or the **Named Insured**, or the Insured Person's  executor or estate may request a Named Individual Extended Reporting Period Endorsement that will apply to such **Insured Person.**

2.  Any request for such endorsement must:

    a.  be made in writing to the Company during the same **Policy Period** or **Policy Year** that the **Insured Person** became disabled, retired, or died, or within 60 days of the ending date of such **Policy Period** or **Policy Year**; and

    b.  include evidence of such disability, retirement, or death.

3.  The Named Individual Extended Reporting Period Endorsement will not apply to:

    a.  **Claims** made while this policy is in force, any successive renewal of this policy is in force, or any extended reporting period that applies to this policy or any renewal of this policy is in force; or

    b.  **Claims** if any other insurance applies to the **Claim**.

4.  The limits of liability applicable to any **Claim** covered under such endorsement will be shared by all **Insured Persons** who qualify for such an endorsement in a **Policy Year**.

5.  There is no charge for the Named Individual Extended Reporting Period Endorsement for eligible **Insured Persons** who become disabled during the **Policy Period** and who permanently cease performance of **Professional Services**, or die.

    The charge for the Named Individual Extended Reporting Period Endorsement for eligible **Insured Persons** who retire during the **Policy Period** is $1,500 per **Insured Person** named in the endorsement.  However, if the **Named Insured** has been continuously insured by the Company, or any of its affiliated insurance companies, for at least three years, no charge will be made for the endorsement.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106051075



Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company:  Travelers Casualty and Surety Company of America
Policy Number:  106051075
PTC-2035  Ed. 11-08  Printed in U.S.A.
©2008 The Travelers Companies, Inc. All Rights Reserved

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SUBPOENA RESPONSE ASSISTANCE ENDORSEMENT

This endorsement changes the following:

**Professional Liability Terms and Conditions**
Lawyers Professional Liability Coverage

**It is agreed that:**

1.   The following is added to the Professional Liability Terms and Conditions:

     *SUBPOENA RESPONSE ASSISTANCE*

     If an **Insured** is subpoenaed for documents or testimony based upon or arising out of **Professional Services** rendered by the **Insured**, and the **Insured** seeks assistance in responding to the subpoena, the Company will pay **Subpoena Response Expenses**; provided that:

     1.   the subpoena is first received by the **Insured** during the **Policy Period** and is reported to the Company along with a copy of the subpoena as soon as practicable during the **Policy Period**, or any applicable **Automatic Extended Reporting Period** or **Optional Extended Reporting Period**;

     2.   the **Professional Services** were rendered on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations;

     3.   no **Claim** has been made against an **Insured** that is based upon or arises out of the **Professional Services** for which the **Insured** is subpoenaed;

     4.   the subpoena is not part of a lawsuit to which the **Insured** is a party; and

     5.   the subpoena is not part of a lawsuit for which the **Insured** has been engaged to provide advice or testimony.

     Payment of **Subpoena Response Expenses** is not subject to a Deductible and does not reduce the Professional Liability Coverage Limits. However, if a **Claim** is made or brought against an **Insured** based upon or arising out of the **Professional Services** for which the **Insured** is subpoenaed, the Company will no longer pay **Subpoena Response Expenses** incurred in responding to the subpoena as of the date the **Claim** is first made or brought.

2.   The following is added to section **IV. DEFINITIONS** in the Professional Liability Coverage:

     *Subpoena Response Expenses* means reasonable and necessary fees, costs and expenses incurred by the Company in retaining an attorney to:

     1. respond to a subpoena;

     2. provide advice regarding the production of documents;

     3. prepare the **Insured** for sworn testimony; or

     4. represent the **Insured** during the **Insured's** deposition or trial testimony.

     **Subpoena Response Expenses** do not include **Defense Expenses** ; the expenses, salaries, wages, benefits, or overhead of, or paid to, any **Insured**; or the cost to copy or produce any documents.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 106051075

© 2011 The Travelers Indemnity Company. All rights reserved.



**TRAVELERS**

One Tower Square
Hartford, CT 06183

January 19, 2015

LEVY & DUBOVICH
290 EAST 90TH DR, STE A
MERRILLVILLE, IN 46410

RE:   COPY OF NOTICE OF NONRENEWAL SENT TO INSURED

Policy Number: 106051075

Policy Type: 1st Choice + for Lawyers

Underwriting Company: Travelers Casualty and Surety Company of America

We wish to inform you that your policy will not be renewed. Your insurance coverage will cease on the policy expiration date of   **March 24, 2015**

The reason for nonrenewal is:

**Excessive fee suit activity.**

If you have any questions, please contact your agent or broker.

Sincerely,

**Casey E Cartiera**

cc: Agency

**Mary Jackson**

**BRAMAN INS SERVICES**
**8001 BROADWAY STE 300**
**MERRILLVILLE, IN 46410**

**Additional Notice:**

LTR-4010 Ed. 01-09 Printed in U.S.A.                                                    Page 3 of 4
©2009 The Travelers Companies, Inc. All Rights Reserved

EXHIBIT
B


**TRAVELERS**

Park Center Plaza, II, Suite 500
6150 Oak Tree Blvd.
Independence, OH 44131

Todd Jackett
Claim Counsel
Bond & Financial Products Claim
Phone: (216) 643-2397
Fax: (800) 716-1058
Email: TJACKETT@travelers.com

March 13, 2015

Debra Lynch Dubovich
Levy & Dubovich
290 East 90th Dr., Ste A
Merrillville, IN 46410

Re:     Insureds:       Insured(s) of Levy & Dubovich
        Policy No.:     027-LB-106051075
        Reference No.:  002-EO-T1503073-NR
        Subject:        Levy & Dubovich v. Djuric

Dear Ms. Dubovich:

This letter further acknowledges Travelers Casualty and Surety Company of America's ("Travelers" or "Company") receipt of the above-captioned matter. On behalf of Travelers, I am writing to respond to your recent notice regarding this matter. The claim arises out of a counterclaim/third party complaint filed in response to Levy & Dubovich's ("Firm") complaint for fees against Cathy Djuric ("Djuric") in the Lake Superior Court as Case No. 45DO1-1501-CC-0005 and captioned *Levy & Dubovich v. Djuric* ("Lawsuit" or "Complaint").

Based upon our review of the material provided, Travelers must disclaim coverage for the Lawsuit under the above-referenced 1ˢᵗ Choice+ Policy No. 027-LB-106051075 ("Policy"). Thus, Travelers is not able to provide you with a defense in this matter and will not pay for any judgment or settlement entered in connection with this matter. The reasons for Travelers' coverage determination are set forth below. Please note that the words and phrases that appear in bold herein are defined in the Policy.

## I.     FACTUAL BACKGROUND

By referencing the allegations made in this matter, we do not mean to assert or imply that the allegations are true or accurate. Any reference to the allegations solely is for the purpose of discussing insurance coverage issues relating to such allegations.

The Firm represented Ms. Djuric is a divorce/dissolution matter. The Firm was retained on October 12, 2009. In or about July 2011, Judith Levy Adler ("Adler"), an attorney with the Firm, advised Ms. Djuric that the Firm was withdrawing as counsel for Ms. Djuric. The Firm subsequently filed a motion to withdraw on August 5, 2011 which was granted on August 9, 2011. The Firm has not represented nor taken any action on behalf of Ms. Djuric since the court granted the motion to withdraw.

The Firm recently filed a collection action against Ms. Djuric seeking to recover attorney fees and/or costs Ms. Djuric allegedly owes the Firm. In response, on or about February 25, 2015, Ms. Djuric filed a counterclaim/third party complaint ("Counterclaim") against the Firm, Ms. Adler,

*******************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.c[...]
include the claim number in the subject line. (Please note that in certain cases we may still request original documen[...]
Rev 02/14/11


EXHIBIT
C

Travelers
Debra Lynch Dubovich
Levy & Dubovich
March 13, 2015
Page 2

and you. In the counterclaim, Ms. Djuric asserts claims of breach of the standard of care and breach of contractual obligations. Specifically, Claimant contends that she retained the Firm in October 2009 and, as such, the Firm and its attorneys owed her a duty of care. Ms. Djuric further contends that the Firm and/or its attorneys breached the standard of care during the representation and breached contractual obligations as follows:  1) withdrawing at a time that placed Claimant's lawsuit in peril; 2) failing to mail invoices; 3) charging interest on fees; 4) making verbal statements contradictory to the retention agreement; and 5) modifying the agreement. Ms. Djuric seeks unspecified compensatory damages.

The Firm submitted this matter for coverage under the **Automatic Extended Reporting Period** contained in the Policy.

## II.   THE POLICY

Travelers issued the Policy to the Firm with the Policy Period from February 1, 2014 to February 1, 2015.  The relevant coverage limits are $1,000,000.00 for each **Claim** and $2,000,000.00 for all **Claims** subject to a deductible of $5,000.00 for each **Claim** which deductible applies to **Damages** and **Defense Expenses**.  The Policy's coverage limits are reduced by **Defense Expenses** incurred. The Policy contains a Knowledge Date of February 1, 2014.

The Policy Coverage (Form LPL-1001 Ed. 11-08) provides in relevant part as follows:

### I.  INSURING AGREEMENT

The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

### IV. DEFINITIONS

Wherever appearing in this policy, the following words and phrases appearing in bold type will have the meanings set forth in section IV. DEFINITIONS:

\*\*\*

A.  *Automatic Extended Reporting Period* means the period of time beginning with the effective date this policy is cancelled or not renewed, and ending:

  1.  60 days after such cancellation or nonrenewal takes effect; or
  2.  the date any other policy obtained by the **Named Insured** that provides similar coverage for **Professional Services** takes effect,

  whichever is earlier.

B.  *Claim* means:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                                                L-15PS-r

Travelers
Debra Lynch Dubovich
Levy & Dubovich
March 13, 2015
Page 3

1. a demand for money or services;
2. a civil proceeding commenced by service of a complaint or similar pleading; or
3. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against any **Insured** for a **Wrongful Act**.

> A **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

\*\*\*

J.  *Insured* means any **Insured Person**, **Named Insured**, or **Predecessor Firm**.

K.  *Insured Person* means any natural person who:

1. is the sole owner of, or is or was a partner in, the **Named Insured** or **Predecessor Firm**;
2. was or is a member of the board of managers, director, executive officer, or shareholder of the **Named Insured** or **Predecessor Firm**;
3. was or is an employee of the **Named Insured** or **Predecessor Firm**; or
4. was or is an **Independent Contractor** or Of Counsel attorney,

provided that such person is acting within the scope of their duties on behalf of the **Named Insured** or **Predecessor Firm**.

\*\*\*

M.  *Named Insured* means the person or entity set forth in ITEM 1 of the Declarations.

\*\*\*

Z.  *Professional Services* means only services in any of the following capacities, and pro-bono services in such capacities, provided that such pro-bono services are performed with the knowledge and consent of the **Named Insured**:

1. Lawyer.
2. Law clerk, paralegal, legal secretary or other legal support staff.
3. Arbitrator or mediator.
4. Lobbyist.
5. Notary public, provided that the **Insured Person** witnessed and attested to the authenticity of the signature notarized by such **Insured Person**.
6. Title Agent.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Travelers
Debra Lynch Dubovich
Levy & Dubovich
March 13, 2015
Page 4

    7. Administrator, conservator, receiver, executor, guardian, trustee or any
       similar fiduciary capacity, directly connected with the **Insured's** practice
       of law.

***

DD.   *Wrongful Act* means any:

    1. actual or alleged act, error, omission, or **Personal Injury Offense** in the
       rendering of, or failure to render, **Professional Services** or **Non-Profit
       Services;**
    2. actual or alleged act, error, omission, or **Personal Injury Offense** in
       **Publishing**; or
    3. Network and Information Security Offense,
       by the **Named Insured** or any **Predecessor Firm**, or by any other
       **Insured** while acting within the scope of their duties on behalf of the
       **Named Insured** or any **Predecessor Firm**.

## *V. EXCLUSIONS*

***

**E. Criminal, Dishonest, Fraudulent Or Malicious Conduct**

This policy does not apply to any **Claim** based upon or arising out of any
criminal, dishonest, fraudulent or malicious conduct, or other willful
violation of laws, committed by any **Insured** or by anyone with the consent
or knowledge of any **Insured**, provided that this exclusion will not apply to:

    1. any **Insured Person** who did not participate in or have knowledge of
       such conduct or violation; or
    2. The Company's duty to defend, or to pay **Defense Expenses** for, any
       **Claim** for malicious prosecution or abuse of process.

## *VI. CONDITIONS*

***

**B. OTHER INSURANCE**
This policy will apply only as excess insurance over, and will not contribute
with, any other valid and collectible insurance available to the **Insured**,
including any insurance under which there is a duty to defend, unless such
insurance is written specifically excess of this policy by reference in such
other insurance to this policy. This policy will not be subject to the terms of
any other insurance.

***

****************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                 L-15PS-r

Travelers
Debra Lynch Dubovich
Levy & Dubovich
March 13, 2015
Page 5

The Professional Liability Terms and Conditions states in relevant part as follows:

*XIV.*                                                                           *AUTOMATIC EXTENDE*

> If this policy is cancelled or not renewed, the **Automatic Extended Reporting Period**
> applies without additional premium effective the date such policy is cancelled or not
> renewed. The **Automatic Extended Reporting Period** applies to **Claims** made and
> reported to the Company during the **Automatic Extended Reporting Period**, but only for
> **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not
> renewed, and which otherwise would be covered. A **Claim** made during the **Automatic
> Extended Reporting Period** will be deemed to have been made on the last day of the
> **Policy Period**.

## III.   COVERAGE ANALYSIS

We note that the Policy was non-renewed with a non-renewal date of February 1, 2015. We further
note that the alleged error stems from **Professional Services** provided by the Firm, Ms. Adler
and/or you prior to the effective date of the non-renewal. We note that the Firm obtained
replacement coverage from Hanover that provides similar coverage for professional services
provided by the Firm. Both the Travelers' Policy and the Hanover Policy are Lawyers Professional
Liability Policies. We finally note that the Hanover policy went into effect on February 1, 2015.

Because the Hanover policy provides similar coverage for **Professional Services** provided by the
Firm and because such policy went into effect on February 1, 2015, any **Automatic Extended
Reporting Period** terminated as of the date of the effective date of the Hanover policy. Thus, the
**Automatic Extended Reporting Period** terminated on February 1, 2015. This matter arose on or
about February 25, 2014 and, as such, this matter was not made and reported to Travelers during
the **Automatic Extended Reporting Period**. As such, the Policy does not afford coverage for this
matter.

Because the Policy does not provide coverage with respect to this matter, Travelers is not able to
provide you with a defense in this matter or pay under the Policy for any damages or loss that you
may sustain in connection with this matter. I would recommend that you place Hanover on notice
of this matter.

Travelers is not providing you with a defense to the Counterclaim as there is no coverage. Failing
to timely and appropriately respond to a Counterclaim or other legal proceeding may result in the
imposition of a judgment against a defendant. You should, therefore, immediately obtain legal
counsel, if you have not yet done so, to protect your interests in the Lawsuit.

As I am sure you can appreciate, Travelers' attention to this matter is subject to a full and complete
reservation of all rights, remedies and defenses under the Policy or otherwise including but not
limited to the following:

****************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                                    L-15PS-r

Travelers
Debra Lynch Dubovich
Levy & Dubovich
March 13, 2015
Page 6

**Damages**:  Please be advised that the Policy only will respond to **Damages** that fall within the Policy's definition of **Damages**.  **Damages** does not include, among other things, civil or criminal fines; sanctions; liquidated damages; payroll or other taxes; penalties; the multiplied portion of any multiplied damage award; equitable or injunctive relief; any return, withdrawal, restitution or reduction of professional fees, profits or other charges.

**Wrongful Act**:  Please be advised that the Policy only will respond to Claims for **Wrongful Acts** as defined by the Policy.

**Criminal, Dishonest, Fraudulent Or Malicious Conduct**:  Please note that the Policy does not apply to any **Claim** based upon or arising out of any criminal, dishonest, fraudulent or malicious conduct, or other willful violation of laws, committed by any **Insured** or by anyone with the consent or knowledge of any **Insured.**

Neither this letter, nor any actions by Travelers or any of its agents shall constitute or be deemed a waiver of any right or defense available to Travelers under the Policy or applicable law.  In addition to the matters discussed above, other defenses may be available to Travelers.  Travelers reserves any legal and policy defenses it may have in connection with this matter, whether or not stated in this letter.  Finally, Travelers reserves the right to modify its coverage position at any time upon receipt of additional information.

We regret we are unable to advise you more favorably regarding this matter and invite you to submit any other information you may have which may bear on our coverage decision.  Of course, please do not hesitate to contact us if you have any questions regarding Travelers' position in this matter.

If you have or obtain further information relevant to potential coverage under the Policy, Travelers will certainly consider that information and you should forward it to my attention at your earliest convenience.  If you have any questions with regard to this matter, do not hesitate to contact me.

Sincerely,

s/ *Todd M. Jackett*

Todd Jackett
Claim Counsel

cc:   Mary Jackson, Braman Insurance Services (mary.jackson@bramaninsurance.com)
     Casey Cartier, Underwriter, Travelers (ccartier@travelers.com)

*******************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                                    L-15PS-r



**TRAVELERS**

Park Center Plaza, II, Suite 500
6150 Oak Tree Blvd.
Independence, OH 44131

Todd Jackett
Claim Counsel
Bond & Financial Products Claim
Phone: (216) 643-2397
Fax: (800) 716-1058
Email: TJACKETT@travelers.com

April 28, 2015

David Beach
Eichhorn & Eichhorn, LLP
200 Russell Street
P.O. Box 6328
Hammond, IN 46325

Re:   Insureds:      Insured(s) of Levy & Dubovich
      Policy No.:    027-LB-106051075
      Reference No.: 002-EO-T1503073-NR
      Subject:       *Levy & Dubovich v. Djuric*

Dear Mr. Beach:

I am writing on behalf of Travelers and Surety Company of America ("Travelers") in connection with your letters of March 30, 2015 and April 20, 2015 in regard to above-referenced matter and to supplement Travelers' correspondence to Levy & Dubovich ("the Firm") dated March 13, 2015, pursuant to which Travelers declined coverage for this claim.  By this, Travelers continues to disclaim coverage for this claim under the above-referenced 1st Choice+ Lawyer's Professional Liability Policy No. 027-LB-106051075 ("the Travelers Policy").  Thus, Travelers is not able to provide the Firm, Ms. Dubovic and/or Ms. Adler with a defense in this matter and will not pay for any judgment or settlement entered in connection with this claim.

The claim arises out of a counterclaim/third party complaint filed on February 25, 2015 in response to the Firm's complaint for fees against Cathy Djuric ("Djuric") filed in the Lake Superior Court as Case No. 45DO1-1501-CC-0005 under caption *Levy & Dubovich v. Djuric* ("Djuric Counterclaim").

As you know, the Travelers Policy expired on February 1, 2015.  With respect to the **Automatic Extended Reporting Period** ("AERP"), the Policy provides as follows, in relevant part: [1]

> ### XIV.   *AUTOMATIC EXTENDED REPORTING PERIOD*
>
> If this policy is cancelled or not renewed, the **Automatic Extended Reporting Period** applies without additional premium effective the date such policy is cancelled or not renewed.  The **Automatic Extended Reporting Period** applies to **Claims** made and reported to the Company during the **Automatic Extended Reporting Period**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed, and which otherwise would be covered.  A **Claim** made during the

---

[1] Please note that the words and phrases that appear in **bold** are defined in the Policy.

****************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.co□
include the claim number in the subject line. (Please note that in certain cases we may still request original document□

Rev 02/14/11


EXHIBIT
D

Travelers
April 28, 2015
Page 2

**Automatic Extended Reporting Period** will be deemed to have
been made on the last day of the **Policy Period**

\*\*\*

The Policy defines "Automatic Extended Reporting Period" as follows:

> A. *Automatic Extended Reporting Period* means the period of time
> beginning with the effective date this policy is cancelled or not
> renewed, and ending:

> 1.   60 days after such cancellation or nonrenewal takes effect; or

> 2.   The date any other policy obtained by the **Named Insured** that
> provides similar coverage for **Professional Services** takes effect.

> whichever is earlier.

\*\*\*

As stated in the above Travelers Policy provisions, the Policy's AERP ends the date a policy
obtained by the Firm that provides similar coverage for **Professional Services** takes effect, if such
date is earlier than April 2, 2015. It is Travelers' understanding that The Hanover Insurance Group
issued a Lawyer's Professional Liability Policy to the Firm under policy no. LHC A54081600,
effective February 1, 2015 to February 1, 2016 (the "Hanover Policy"). Given the existence of the
Hanover Policy as of February 1, 2015, and the AERP provision contained in the Travelers Policy,
Travelers has determined that no coverage exists for the Djuric Counterclaim under the Travelers
Policy.

You report that Hanover has denied coverage for the Djuric Counterclaim on the basis of an
exclusion contained in the Hanover Policy titled Exclusion – Suits for Unpaid Fees. On the basis of
this declination, you assert that the expired Travelers Policy should apply to the Djuric
Counterclaim because the Firm did not obtain a policy that provides "similar coverage for
**Professional Services"** as set forth in the Travelers Policy's AERP. In other words, you contend
that unless the Hanover Policy is *identical* to the Travelers Policy respecting coverage for tendered
claims, it is not "similar coverage for **Professional Services."** This is an incorrect and
unreasonable reading of the AERP provision.

The AERP does not require that the replacement policy be identical to the Travelers Policy, only
that it provide "similar coverage" for professional services. Similar is defined as "having
characteristics in common" or "alike in substance or essentials." See Merriam-Webster,
http://www.merriam-webster.com/dictionary/similar. In this case, the fact that the Hanover Policy
contains an exclusion that is not contained in the Travelers Policy is immaterial. The Travelers
Policy and the Hanover Policy have characteristics in common and are alike in substance – they
both provide coverage for alleged wrongful acts stemming from the Firm's professional legal
services. Consequently, the policies provide similar coverage for professional services. As such,
since the Hanover Policy was in effect as of February 1, 2015, any AERP terminated as of that date,
and there is no coverage under the Travelers Policy for the Djuric Counterclaim.

Travelers' position with respect to this matter is based upon information provided to date. Travelers
reserves all rights and defenses available under the Policy and at law to deny coverage on any
additional and alternative ground as other terms, conditions, provisions, exclusions, and

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                                                    L-15PS-r

Travelers
April 28, 2015
Page 3

endorsements may apply to preclude coverage. Travelers also reserves the right to supplement or modify its coverage position.

If you are aware of any facts or circumstances that you believe should affect Travelers' coverage evaluation and the denial of coverage set forth in this letter, or if you know of any facts or circumstances that would support any views contrary to those expressed in this letter, we would welcome your written comments.

Sincerely,

s/Todd M. Jackett

Todd Jackett
Claim Counsel

**********************************************************************************
If possible, please send future communications and documents concerning this claim via email to TJACKETT@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 02/14/11                                                                                                    L-15PS-r