UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LEVY & DUBOVICH, <br> DEBRA LYNCH DUBOVICH, and <br> JUDY LEVY ADLER <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS CASUALTY AND <br> SURETY COMPANY OF AMERICA <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CAUSE NO: 2:15-CV-278 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

Plaintiffs, the law firm of Levy & Dubovich ("the Firm") and individual attorneys, Debra Lynch Dubovich, and Judy Levy Adler (collectively, "the Plaintiffs") filed the present declaratory judgment suit after their professional liability insurance carrier, Defendant Travelers Casualty and Surety Company of America ("Travelers"), refused to defend and provide coverage for matters the Plaintiffs contend fall within the professional liability policy provisions.

Before the Court are Cross-Motions for Summary Judgment by the parties. For the following reasons, the Plaintiffs' Motion for Summary Judgment [DE 7] will be DENIED. Travelers' Cross-Motion for Summary Judgment [DE 11] will be GRANTED.

## FACTUAL BACKGROUND

The underlying facts leading to this action are largely undisputed. The Firm is a legal partnership located in Lake County, Indiana. Judith Levy Adler ("Adler") and Debra Lynch Dubovich ("Dubovich") were partners in the Firm. Travelers is an insurance company licensed to do business in Indiana.

1

Travelers issued a policy of insurance to the Plaintiffs that provided Professional Liability Coverage ("the Policy") to the Plaintiffs from February 1, 2014 through February 1, 2015. Subject to all of its terms, conditions, and exclusions, the Policy's Insuring Agreement states, in relevant part, "[t]he Company will pay on behalf of the **Insured. Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date ..."[1] (Policy at p. 1). The Policy defines **Claim** as "a civil proceeding commenced by service of a complaint or similar pleading" against any **Insured** for a **Wrongful Act.** A **Claim** is deemed made "on the earliest date such notice thereof is received by any **Principal Insured**." (*Id.* at 2).

> The term **Wrongful Act** is defined in the Policy as follows:
>
> DD. *Wrongful Act* means any:
> 1. actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services** or **Non-Profit Services**;
> 2. actual or alleged act, error, omission, or **Personal Injury Offense** in **Publishing**; or
> 3. **Network and Information Security Offense**, by the **Named Insured** or any **Predecessor Firm**, or by any other **Insured** while acting within the scope of their duties on behalf of the **Named Insured** or any **Predecessor Firm**.

(Policy at p. 5).

The Policy defines **Professional Services** to include various legal services performed by or with the consent of the named insureds by lawyers, law clerks, paralegals, legal secretaries, involving legal, arbitration, mediation, lobbying services, etc. More specifically, the term Professional Services means:

> …only services in any of the following capacities, and pro-bono services in such capacities, provided that such pro-bono services are performed with the knowledge and consent of the **Named Insured**:

---

[1] Terms appearing in bold are defined in the Policy and carry the same meaning in this Opinion and Order.

1. Lawyer.
2. Law clerk, paralegal, legal secretary or other legal support staff.
3. Arbitrator or mediator.
4. **Lobbyist**.
5. Notary public, provided that the **Insured Person** witnessed and attested to the authenticity of the signature notarized by such **Insured Person**.
6. **Title Agent**.
7. Administrator, conservator, receiver, executor, guardian, trustee or any similar fiduciary capacity, directly connected with the **Insured's** practice of law.

(Policy at p. 5).

The controverted issue in this case, involves the portion of the Policy that provides for an Automatic Extended Reporting Period ("AERP") to take effect, in certain circumstances, at the termination of the **Policy Period**. The Policy states as follows, in relevant part, with respect to the AERP:

> If this policy is cancelled or not renewed, the **[AERP]** applies without additional premium effective the date such policy is cancelled or not renewed. The **[AERP]** applies to **Claims** made and reported to the Company during the **[AERP]**, but only for **Wrongful Acts** committed wholly prior to the effective date this policy is cancelled or not renewed, and which otherwise would be covered. A **Claim** made during the **[AERP]** will be deemed to have been made on the last day of the **Policy Period**.

(Policy at p. 5). **AERP** is defined to mean "the period of time beginning with the effective date [the Policy] is cancelled or not renewed" and ending the earlier of "(1) 60 days after such cancellation or nonrenewal takes effect; or (2) the date any other policy obtained by the **Named Insured** that provides similar coverage for **Professional Services** takes effect." (Policy at p. 5)

On January 16, 2015, the Firm filed a collection action in Indiana state court against Cathy M. Djuric ("Djuric"), seeking to recover attorney fees and costs Djuric allegedly owed it. Shortly thereafter, on January 19, 2015, Travelers advised the Plaintiffs that the Policy would not be renewed due to "excessive fee suit activity." (Complaint, Exh. B).

3

Following that notice, the Plaintiffs sought and obtained professional liability insurance from Hanover Insurance Group, under policy no. LHC A54081600 (the "Hanover Policy"). The Hanover Policy was effective for the policy period of February 1, 2015 to February 1, 2016, and insured the Firm for wrongful acts in the rendering of or failure to render professional services. There is no dispute that the definition of "professional services" in the Hanover Policy and the Policy issued by Travelers is similar. However, the Hanover Policy, contained an exclusion endorsement for any suits arising out of or related to claims for fees brought by the Firm. This exclusion did not exist in the Travelers' Policy. It is this exclusion that creates the central issue presented in this case, that is, whether the Hanover Policy can be considered "similar coverage" for purposes of the AERP when it contains such an exclusion.

On February 24, 2015, after the effective date of the Hanover Policy, but before the AERP would have expired under the Policy, Djuric filed a counterclaim ("the Djuric Counterclaim") against the Firm alleging, among other things, that the Firm committed legal malpractice.

On March 4, 2015, the Firm first reported the Djuric Counterclaim to Travelers and requested coverage under the Policy. On March 13, 2015, Travelers advised the Firm by letter that the Policy does not provide coverage for the Djuric Counterclaim because the claim was not made during the policy period or made and reported to Travelers during any applicable AERP. Traveler's position is that the acquisition of the Hanover Policy was similar coverage sufficient to terminate the AERP.

## **APPLICABLE STANDARD**

Rule 56(a) authorizes the court to grant summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court is required to enter summary judgment "after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The above notions apply equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir.1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.,* 335 F.3d 643, 647 (7th Cir.2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With **cross-motions**, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.,* 246 F.3d 975, 983 (7th Cir.2001) (quoting *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir.1998)). The court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003) ("these are jobs for a factfinder"); *Hemsworth,* 476 F.3d at 490. Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

**DISCUSSION**

A.  **General Principles**

5

Insurance policies typically impose dual obligations on the insurer: the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages. Because an insurance policy is a contract for insurance, it is governed by the same rules of construction as other contracts. *Briles v. Wausau Ins. Cos.,* 858 N.E.2d 208, 213 (Ind.Ct.App.2006) (citing *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004).[2] As with other contracts, their interpretation is a question of law. *Briles,* 858 N.E.2d at 213.

When interpreting an insurance policy, the goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* In reviewing policy terms, the court construes them from the perspective of an ordinary policyholder of average intelligence. *Allgood v. Meridian Sec.Ins.Co.,* 836 N.E.2d 243, 246-47 (quoting *Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447, 452 (Ind.Ct.App.2000)). Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, courts construe insurance policies strictly against the insurer. *See Fidelity and Deposit Co. of Md. v. Pettis Dry Goods Co.,* 207 Ind. 38, 42 (1934) ( "any doubts or ambiguities must be resolved most strongly against the insurer).[3] This is particularly the case where a policy excludes coverage. *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996). At the same time, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood,* 836 N.E.2d at 247.

An insurer's duty to defend its insureds against suit is broader than its coverage liability or

---

[2] The parties are in agreement that Indiana law controls this dispute under the principles of *Erie* doctrine. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[3] Strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts. *Wagner v. Yates,* 912 N.E.2d 805, 810 (Ind. 2009). The insurance companies write the policies; we buy their forms or we do not buy insurance. *Id.* at 811 (quoting *Kiger,* 662 N.E.2d at 947). Nevertheless, we enforce limits on coverage where the policy unambiguously favors the insurer's interpretation.

duty to indemnify. *Trisler v. Indiana Ins. Co.* 575 N.E.2d 1021, 1023 (Ind.Ct.App. 1991). The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required. *Id.*

   **B. Application**

As noted at the outset, Travelers denied coverage for the Djuric Counterclaim and refused to defend the Plaintiffs in that suit, which, in turn, spawned the present suit. According to Travelers, it denied coverage because the claim was not made during the policy period or made and reported during the AERP, as required in order to trigger the Policy's coverage.[4]

In response, the Plaintiffs contend that denial of coverage was erroneous because the AERP was in effect when the claim was made. Under their scenario, the AERP was in effect despite the Plaintiffs' purchase of replacement professional liability insurance coverage from another insurer because the AERP only terminates after 60 days **or** when "similar coverage" is obtained. Plaintiffs contend that the exclusion for fee disputes in the Hanover Policy renders the professional liability insurance coverage dissimilar from the Traveler's Policy and therefore, Travelers erroneously denied coverage.

From the outset, the Court begins with what is and is not in dispute as well as the relevant Policy language. First, there is no question that the Policy was not renewed and there exists no dispute that Travelers had a non-renewal right with respect to the Policy. Second, there is no dispute that the Djuric Counterclaim was made outside the initial Policy Period (not considering the AERP) since the Plaintiffs did not report the Djuric Counterclaim until March 4, 2015 and the Policy expired on February 1, 2015. Third, there is also no dispute that *IF* the Hanover Policy is

---

[4] The Policy is written as a "claims-made" policy meaning that a claim must be asserted against the insured during the policy period before coverage is applicable.

7

not considered "similar coverage," Travelers has an obligation to defend the Djuric Counterclaim as it was reported during the 60 days of the AERP. This leaves the Court with the sole legal issue in this case: whether the Hanover Policy which excludes any claims arising out of or related to claims for fees brought by the Firm provides "similar" professional liability coverage under the terms of the Travelers' Policy.

To that end, the Court looks first at the terms of the Policy. The Policy states that the coverage extends for 60 days or until "the date any other policy obtained by the Named Insured that provides similar coverage for Professional Services takes effect." The Policy does not further define the term "similar coverage for Professional Services." Thus, the dispute in this case turns entirely on the meaning of the phrase "similar coverage for Professional Services." As noted above, if the Hanover Policy constitutes "similar coverage for Professional Services" then the AERP in the Travelers' Policy terminated on the date the Hanover Policy coverage commenced and Travelers is under no obligation to defend the Djuric Counterclaim. On the other hand, if the two policies do not provide "similar coverage for Professional Services," the Court must consider whether Travelers owes a duty to defend the Plaintiffs in the Djuric Counterclaim.

The Plaintiffs urge the Court to determine that use of the phrase "similar coverage" is ambiguous, that is, reasonably susceptible of more than one interpretation. As the logic follows, because, in their view, the phrase is ambiguous, the Court should construe the language against the insured and determine the Hanover Policy does not provide "similar coverage." In response, Travelers reasons that the plain, ordinary meaning of the word "similar" is unambiguous and the Hanover Policy clearly constitutes "similar coverage."

The parties have not pointed to any binding authority interpreting the clause "similar coverage" in an insurance dispute such as this and this Court has found none, so it is left to interpret

the clause. As a court sitting in diversity, this is accomplished by ascertaining the substantive content of state law as it has been determined by the Indiana Supreme Court, or as it would be by that court if the present case were before it. *See Craig v. FedEx Ground Package Sys., Inc.,* 686 F.3d 423, 426 (7th Cir.2012).

Under Indiana law, when as here, the parties leave contract terms undefined, Indiana common law is used to determine their meaning. *Jones v. Western Reserve Group/Lighting Rod Mut. Ins. Co.,* 699 N.E.2d 711, 714 (Ind.Ct.App.1998). The fact that an insurance policy does not define each term within it does not somehow make an undefined term ambiguous. *Wagner v. Yates,* 912 N.E.2d 805, 810 (Ind. 2009). In this case, the Policy utilizes the word "similar" as the modifier for the phrase "similar coverage." According to Merriam Webster's online dictionary, the definition of "similar" is "having characteristics in common" or "alike in substance." *http://www.merriam-webster.com/dictionary/similar*. Thus, it follows that "similar coverage" implies coverage that has like characteristics.

Here, Travelers asserts that the two policies insure the same type of risk, that is, they both provide coverage for claims arising from wrongful acts in the rendering of professional services and thus, they are generally alike in substance. The sole difference in the two professional liability policies set forth by the parties is the exclusion endorsement in the Hanover Policy for a discrete set of professional liability claims relating to fee disputes. It is this very difference, however, that the Plaintiffs assert makes the two policies dissimilar.

Courts in other jurisdictions have considered the phrase "similar coverage" and determined that use of the word "similar" is akin to the phrase "bearing a resemblance to." Thus, where a policy's coverage bears a resemblance to that of another policy, even if not identical, the policies are similar. *See Pacific Indemnity Co. v. Imperial,* 176 Cal.App.3d 622 (Ca. Ct.App.1986).

9

In *Pacific Indemnity*, like in this case, the court interpreted a clause that extended coverage under an expired policy unless the insured "obtained similar insurance issued after the termination of the policy." There, the new insurance obtained covered the same risk for the insured, but rather than a claims-made policy, an occurrence policy was issued. The Court, in examining the word "similar" concluded the two policies were similar since they were "nearly corresponding; resembling in many respects; somewhat like." *Id.* at 627.

Other jurisdictions have likewise concluded that the term "similar" is not ambiguous on its face. See, e.g., *Cal. Dairies Inc. v. RSUI Indem. Co.,* 617 F.Supp.2d 1023, 1037–38 (E.D.Cal.2009) (noting that if the court were to define the term "similar" as the "same" or "identical," that definition would defeat the exclusionary provision's purpose of avoiding the moral hazard of employers insuring against labor law violations); *Gangi v. Sears, Roebuck & Co.,* 33 Conn.Supp. 81, 360 A.2d 907, 908 (1976) (explaining that the word "similar" as ordinarily used means "general likeness although allowing for some degree of difference"); *Newman v. Raleigh Internal Med. Assocs.,* P.A., 88 N.C.App. 95, 362 S.E.2d 623, 626 (1987) (finding that "similar" is a commonly used word, with an easily ascertainable definition in an employment contract dispute).

In this case, with the exception of the exclusion in the Hanover Policy for legal action arising out of fee disputes, the risk insured and undertaken by the Hanover Policy is the same general risk undertaken by the Travelers' Policy. Both policies provide coverage for professional liabilities undertaken by the Plaintiffs in the course of their legal practice. That said, the Travelers' Policy chose the word "similar" as the modifier for coverage; it did not choose the words "same" or "identical" to precede "coverage." Thus, the Court construes the word "similar" to mean just that – a Policy obtained by the named insured that has characteristics in common with the original Policy but that may not be "identical" in terms of its coverage or exclusions. To hold otherwise,

10

would render the use of the term "similar" in the Policy meaningless. And, Indiana courts clearly disapprove of such a result. *FLM, LLC v. Cincinnati Ins. Co.,* 973 N.E.2d 1167, 1174 (Ind.Ct.App.2012) (holding that a court should construe the language of an insurance policy so as not to render any words, phrases, or terms ineffective or meaningless); *See Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 716 (Ind.Ct.App.1999) (noting that we "make all attempts to construe the language" so as not to "render any words, phrases, or terms ineffective or meaningless."). Here, both policies insure the same pool of risk and offer professional liability coverage for the Plaintiffs for professional acts undertaken by them. Accordingly, the Court concludes that the Hanover Policy offers "similar coverage" as that term is used in the Travelers' Policy.

In light of this conclusion, the Court further concludes that the AERP terminated when Plaintiffs obtained the Hanover Policy; Travelers owes no duty to defend or indemnify the Plaintiffs for the Djuric Counterclaim as notice of the claim was provided by the Plaintiffs outside the Policy Period set forth in the Policy. For the same reason, the Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing are likewise foreclosed as is the claim for punitive damages.

## CONCLUSION

Based on the foregoing, the Plaintiffs' Motion for Summary Judgment is DENIED. The Defendant's Cross-Motion for Summary Judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

Entered: This 30th day of March, 2016

s/ William C. Lee
United States District Court